### ALEXANDER v. LOUISVILLE & N. R. CO.

(Circuit Court, N. D. Georgia.    February 19, 1902.)

No. 1,459.

1. REFERENCE—FINDINGS OF FACT.
    Where, by consent, the issues in an action at law are referred to an auditor, his findings of fact are entitled to the same weight as the verdict of a jury.

2. RAILROADS—INJURY TO PERSON NEAR TRACK—CONTRIBUTORY NEGLIGENCE.
    Evidence considered, and *held* to support a finding that plaintiff, who was caught between a railroad train and a station platform and injured,

was guilty of contributory negligence in attempting to cross the track ahead of the train after he saw it approaching.[1]

At Law. Action for personal injury. On exceptions to report of auditor.

Burton Smith, for plaintiff.
King & Spalding, for defendant.

NEWMAN, District Judge. This is a suit brought by the plaintiff against the defendant for the recovery of damages for injuries alleged to have been received by the plaintiff by being caught between a moving train belonging to defendant and the depot platform in the town of Gadsden, Ala., the plaintiff claiming that he was entirely free from fault, and that said injuries were received on account of the negligence of defendant's servants and employés. The case was referred to an auditor,—an unusual proceeding in actions ex delicto,— but the reference was by consent of counsel, with the usual leave of exception. The auditor having found in favor of the defendant on the questions involved, the case now comes before the court on the exceptions of the plaintiff to the auditor's finding. There were several grounds of negligence alleged, which were as follows: First, that while the plaintiff was crossing the defendant's tracks, going to the depot to purchase a ticket, and in a place where he had a right to be, without any warning or notice to him of any sort a train of the defendant came swiftly upon him, and ran him down, and caught him between the platform and the train; second, that the tracks of the defendant are so arranged that he could not see the train until it was nearly upon him, and too late for him to escape the danger; third, that the train was running at a high rate of speed, and gave no signal or warning; and, fourth, that the defendant was negligent in running its train across the street where the plaintiff was injured at the time when the passenger train which plaintiff expected to board was due.

The auditor found for the defendant because he thought the plaintiff was guilty of contributory negligence in the following way: He thought the plaintiff saw the train, and sought to cross in front of it as it was approaching, so as to mount the steps leading to the ticket office; and in so doing was caught and injured. The auditor believed that this constituted such contributory negligence on the part of the plaintiff as would prevent recovery. If this finding of the auditor has evidence to support it, the duty of the court here is plain. The evidence set out by the auditor and relied on by him is as follows:

Examination of the plaintiff:

"Q. Where were you just before you started to the depot? A. I was standing just across the track from the platform. Q. About how long was that before train time? A. I had been there, I suppose, about a minute, I don't think I had been there longer than a minute. The train was then due there. I cast my eye up at the hotel, and the train was standing there. I made to cross to the steps down there in about 15 feet of me, and as I got up against the platform I seen the car coming. I didn't advance any further up towards the steps. I seen the distance was too great, and I just closed

---

[1] Injuries to persons at railroad stations, see note to Railroad Co. v. Hyde, 41 C. C. A. 550.

myself up against the platform. Had been to Gadsden twice before,—once by private conveyance, and once by the cars. Got my ticket there at that place. I got off there this time. Q. Were you standing or walking when you first saw the train? A. Standing, sir. My back was towards this freight train. Q. What was the first notice you had of it? A. It was in about 15 or 20 feet of me,—the car was,—when I first noticed it. Q. How did you happen to see it, or know it was coming? A. As I just stated, when I intended to go to those steps, when I got across to the side of the platform, I saw that the car was advancing, and that I couldn't make it any further. Q. You hadn't seen the car until then? A. No, sir. Q. Were you on the track or off of it when you first saw it? A. I was off of the track. Q. On the side towards the platform, or how, when you first saw the train? A. No, sir; I was crossing over to the platform. Q. Where were you when you first saw the train? A. I was against the platform when I first saw the train that hit me. I was crossing,—done across the track,—and was on the ground."

On page 20, cross-examination, Alexander says:

"Q. How were you standing, in relation to those steps,—how far from them were you? A. I was about 15 or 20 feet from them. Q. Was this track that you were hurt by between you and the steps or not? A. Yes, sir. * * * Q. Then, after you came down there and stopped, as you described before, where was it you stopped,—down here the station? A. Well, I stopped in 15 or 20 feet of the steps, just across the track. Q. What did you do there when you stopped? A. Well, I was talking to a gentleman standing there. I don't think it was more than a minute, sir. I look up towards the hotel, and seen the train (the passenger train). Q. Then what did you do? A. I walked right across towards the steps to get my ticket. Q. Where were you, or what looking did you do? A. Well, sir, I taken a general glance as I generally do. I have always been accustomed to trains, more or less, ever since I was a boy. I used to be a butcher (on W. Pt. R. R.). Q. Well, after you had taken that glance, what did you do? A. I walked right across to the steps. Q. Did you see your train? How close to you was it when you first saw it? A. The train was in 15 or 20 feet of me—the car was—before I seen it. Q. What direction were you, as to the car that hit you, just when you saw it, and just before? A. I was sidewise to it, going across, and the car was coming up. Q. Were you on the track, or where were you, when you saw that train? A. I was near the track, just stepped off against the platform, when I seen the train. Q. Was there a good space between the platform and the track there for a man to walk? A. Yes, sir; there is 3 or 3½ feet; may be more; I couldn't say."

Examination of Newt Adams:

Describes walking leisurely down Second street. Was so familiar with the locality that he says it was an unusual time for that train to be there. Did not stop at shanty, slowed up a little. "There was some shade trees, and we made it as long as possible staying in the shade until the train come in." Walked in the triangle. Never saw any ticket sold at Printup House. Office he worked for near the ticket office in Printup House. If any engines or cars had gone along pipe works track could have seen them. Did not see any. Never crossed the cut-off track. Alexander got on it. Went on, did not stop. "When he turned to go across I was on Alexander's left. We didn't make more than a step,—hadn't more than got started back, and started across,—before we discovered this train on us. Q. How far had you gotten into that pipe works track when you saw it? A. When we first saw it, we were just about stepping over into it. I think Mr. Alexander saw it first. He just spoke to me, and says, 'Newt, we are gone,' and we both made a run to the platform. We were going along down here, 'near the frog,' when he was ringing the bell down there getting ready to come out [passenger train]."

W. B. Armstrong, conductor of train that hurt plaintiff, says they made two trips on the pipe works track. On the first trip he saw Alexander and Adams. They were hurt 12 or 15 feet from the steps.

Mrs. C. W. Parr says:

"The men were coming down the sidewalk on Second street. They came on down to the crossing, and got on the track, and walked up the track. The men had the opportunity of seeing the train coming if they had looked back. Don't know whether the bell rung or not."

The auditor says:

"The preponderance of the testimony is that the locomotive bell was ringing as the train which caught the plaintiff was coming 'across Second street.' The plaintiff says he did not hear the bell ring. Adams does not say whether it was ringing or not, but does say he heard the bell on the passenger train. McMullen, the fireman, says he was ringing the bell. Porterfield, the fireman, says the fireman was ringing the bell. The witness Howe says he heard the bell ringing. Carroll, the engineer, says the bell was ringing. There is no positive testimony that the bell did not ring. Some of the witnesses did not hear or did not notice it, while some were not asked about it. No witness denies the switching of the train, and the testimony is convincing that two trips were made to the pipe works, and each time it was necessary for it to cross Second street, making a crossing of that street four times, even if it did not run up and down the house track. It would seem impossible to conclude that the plaintiff did not know of the presence of this train, and that it had crossed Second street, and was in towards the pipe works, at the time he and Adams were approaching the tracks across Second street."

There can be no question that this evidence abundantly supports the finding. If it was the verdict of a jury in favor of the defendant, and a motion for a new trial, on the ground that the verdict was not supported by the evidence, no court would hesitate to overrule the motion. The same rule should apply where, by consent of the parties, the case is referred to an auditor.

The exceptions will all be overruled on the ground that there is sufficient evidence to support the finding of the auditor that the plaintiff endeavored to cross in front of a moving train, and was injured thereby, and was guilty of such contributory negligence as to bar a recovery for the injuries received. The report of the auditor will be confirmed.